

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTINE CHAMPLIN and )
CHARLIE B. ROMSTAD, as joint )
personal representatives of the estate of )
STELLA RIEHL, deceased, )
)
        Plaintiffs, )
)
vs. )   No. 02 C 1966
)
BURLINGTON NORTHERN SANTA )
FE CORPORATION, a corporation, )
et al., )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

On March 17, 2001, an Amtrak train on the California Zephyr line derailed outside of Nodaway, Iowa, killing one of its passengers, Stella Riehl (decedent). A year and one day after decedent's death, plaintiffs, decedent's two children, Christine Champlin and Charlie Romstad, brought a wrongful death and survival action, as the personal representatives of her estate, against defendants Burlington Northern Santa Fe Corporation (Burlington Northern), The Burlington Northern and Santa Fe Railway Company (Burlington Railway), Herzog Contracting Corporation (Herzog), and Amtrak. Plaintiffs subsequently dismissed Herzog from the suit.

On February 7, 2005, approximately nine months after we held that Colorado law governed the determination of compensatory damages in this case, *see* Champlin v. Burlington Northern Santa Fe Corp., 2004 WL 1102296 at *1 (N.D.Ill. 2004), Burlington Northern, Burlington Railway and Amtrak presented plaintiffs with a Rule 68 Offer of Judgment in the

amount of $500,000. On February 17, 2005, plaintiffs accepted the offer, and one month later they moved for the court's approval to distribute the judgment proceeds. The court entered an order of judgment for $500,000 and directed the relevant defendants to place the sum into an interest- bearing account on or before May 5, 2005. Prior to the entry of judgment, Adolph Riehl (Riehl), decedent's surviving spouse, filed an objection to plaintiffs' motion to approve distribution of the judgment proceedings. Subsequently, Riehl also filed a motion to reconsider the court's order of judgment against defendants. We now consider Riehl's objection and motion to reconsider.

Since the distribution of judgment occurs only if the order of judgment is entered, we will first review Riehl's motion to reconsider the order. A party may bring a motion for reconsideration to correct errors of law or fact, or to present newly discovered evidence. *See* Bordelon v. Chicago School Reform Board of Trustees, 233 F.3d 524, 529 (7th Cir. 2000)(citing LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1995)). Riehl argues that the court erred in entering the order of judgment because it deprived him of the right under the Colorado Wrongful Death Act, C.R.S. § 13-21-201, *et seq.*, to join in the suit as a party plaintiff.

In Colorado, a surviving spouse has the priority right to bring a wrongful death action for the first year after the decedent's death. C.R.S. § 13-21-201(1)(a). Heirs of the decedent can only bring a wrongful death action during that first year, whether joined with the surviving spouse or alone, if the spouse provides written consent. *Id.* If no action has been brought in the first year after decedent's death, either the surviving spouse, an heir, or both, joined together, can bring an action in the second year, but only one action can be maintained. *Id.* §§ 13-21-201(1)(b), 13-21-203(1); *see* Mitson v. AG Engineering and Development Co., Inc.,

835 F.Supp. 572, 573-74 (D.Colo. 1993). Under Colorado law, if an heir or heirs bring the action in the second year after decedent's death, "the spouse, upon motion filed within 90 days after service of written notice of the commencement of the action upon him, shall be allowed to join the action as a party plaintiff." *Id.* § 13-21-201(1)(b)(II). Decedent's two children brought wrongful death claims against defendants in the second year after their mother's death, as is their right under Colorado law.[1] Riehl argues that he was never served with written notice of the commencement of this action and therefore he was never allowed his 90 days to join decedent's children as a plaintiff.

The Colorado legislature amended the Wrongful Death Act in 1988, adding the language that Riehl cites. *See* C.R.S. § 13-21-201(1)(b)(II). Our review of case law does not reveal any Colorado or federal decisions concerning this provision. The statutory language is curious. It implies that heirs of a decedent who file a wrongful death action must serve written notice of the action on a surviving spouse, yet nowhere in the act is such a requirement stated. Regardless, given the facts before us, we reject Riehl's contention that he was denied an opportunity to join the action. Exhibits submitted with Riehl's memoranda confirm that he has known of this suit for several years, but, until his recent filing of a motion to intervene, has never moved to join as a party.

In a letter dated January 9, 2004, from Cara Luther, Riehl's attorney, to Albert Durkin, plaintiffs' attorney, Luther states that on June 25, 2002, she requested copies of the pleadings

---

[1] In addition to the wrongful death claims, plaintiffs' complaint also states survival claims. Plaintiffs alleged all of their claims as personal representatives of decedent's estate, seemingly due to the assumption that Iowa law governed their wrongful death and survival claims. As we have held that Colorado law, not Iowa law, applies to the determination of compensatory damages in this case, we construe the complaint to allege wrongful death claims brought by plaintiffs in their individual capacities, and survival claims brought by plaintiffs as the appointed representatives of decedent's estate. *See* McCord v. Affinity Insurance Group, Inc., 13 P.3d 1224, 1227 (Colo.Ct.App. 2000).

in this case. Though Luther's assistant had to make several follow up calls, Luther "subsequently obtained them through a copy service." Thus, even though Riehl did not receive service of written notice, he has had notice of plaintiffs' action at least since June 25, 2002. Despite this knowledge, he did not move to join the action as a party within 90 days. For over two years and ten months he did not move to join the action. As evidenced by Riehl's exhibits, Luther remained in contact with Durkin through telephone conversations and correspondence, yet not until filing a motion to intervene on May 12, 2005, did Riehl seek to join the suit. However, Riehl's 90-day window to join this wrongful death action expired long ago. Now almost three years (at least) after Riehl learned of plaintiffs' action, he claims that he has been denied his statutory right to join the suit. In fact, nothing impeded Riehl from joining the suit within 90 days after learning that plaintiffs had filed it. It was an option that he chose not to exercise, just as he chose not to bring suit during the first year after decedent's death, when he had the priority right to do so.

Though we had not decided on June 25, 2002, that Colorado law applied to the determination of compensatory damages – that decision would not come until April 29, 2004 – the parties should have been well aware that the law may apply as decedent was a resident of the state, as were two of her alleged beneficiaries, and she owned property there. Contrary to Riehl's assertions, he has not been denied a right, under the Colorado Wrongful Death Act, to join plaintiffs' action. Rather, he long ago allowed his 90-day right to join the action expire.

Riehl also objects to the distribution of judgment proceedings. On March 17, 2005, plaintiffs filed a motion to approve distribution of judgment proceedings. The motion seeks a court order dividing the $500,000 judgment equally between decedent's three surviving next-of-kin, Riehl, and plaintiffs Champlin and Romstad. Each next of kin would receive one-third

of the sum remaining after plaintiffs' attorneys, Nolan Law Group, took their 25% contingency fee and $7,342.65 in costs. Riehl opposes this distribution because (1) the settlement did not take into account his economic losses, and therefore is inadequate; (2) the settlement terms regarding attorneys' fees are unfair and contrary to a prior agreement between his counsel and plaintiffs' counsel; and (3) plaintiffs' settlement agreement constitutes a breach of fiduciary duty.

As neither plaintiffs nor Riehl discuss some pertinent aspects of the Colorado Wrongful Death Act, we begin our analysis of Riehl's arguments with a brief sketch of the law as it concerns the distribution of wrongful death judgments. Given that wrongful death actions are rooted in statute, not common law, "the proper method for distribution of monies recovered in connection with a wrongful death action must be derived exclusively from the terms of the wrongful death statute." Klancke v. Smith, 829 P.2d 464, 466 (Colo.Ct.App. 1991)(citing Clint v. Stolworthy, 144 Colo. 597, 600, 357 P.2d 649, 651 (Colo. 1960)). Prior to the 1988 amendments, Colorado's Wrongful Death Act allowed an action "(a) By the husband or wife of deceased; or (b) If there is no husband or wife, or he or she fails to sue within one year after such death, then by the heir or heirs of the deceased." C.R.S. § 13-21-201(1), *amended by* Laws 1988, H.B. 1289, §§ 1, 2. A Colorado Court of Appeals held that this language allowed a decedent's surviving spouse and daughter to bring a joint action in the second year after the decedent's death. Peck v. Taylor, 38 Colo.App. 90, 554 P.2d 698 (Colo.Ct.App. 1976). However, eight years later, in Public Service Co. of Colorado v. District Court, 674 P.2d 383, 385 (Colo. 1984), the Colorado Supreme Court disagreed. The court stated that a surviving spouse's sole right to bring an action is lost if not asserted in the first year after death, and in the second year the right to sue rested with the decedent's heirs. *Id.* Only if the heirs had not

initiated suit could the surviving spouse bring an action in the second year. *Id.*; Williams v. Trailmobile, Inc., 745 P.2d 267, 268-69 (Colo. Ct. App. 1987)(recognizing that surviving spouse could only bring wrongful death action in second year if surviving child does not, but refraining from applying Colorado Supreme Court's ruling retrospectively). The Colorado Supreme Court noted that even though joint suits were not allowed, the Wrongful Death Act protected non-party heirs, by providing that "[i]f the action under this section is brought by the husband or wife of the deceased, the judgment obtained in said action shall be owned by such persons as are heirs at law of the deceased under the statutes of descent and distribution, and shall be divided among such heirs at law in the same manner as real estate is divided according to said statute of descent and distribution." Public Service Co., 674 P.2d at 385 n.3 (citing C.R.S. § 13-21-201(2), *amended by* Laws 1988, H.B. 1289, §§ 1, 2). Though this language protected a decedent's heir's right to a share of any judgment – even though he was not party to the suit – it did not protect a surviving spouse's right to a share of proceeds if he had not brought suit in the first year after death. Landsberg v. Hutsell, 837 P.2d 205, 208 (Colo. Ct. App. 1992). In other words, "[i]f the surviving spouse fails to exercise an exclusive right to sue, that spouse loses not only the right to sue, but the right to share in the proceeds of any award made to the children." *Id.*

In Landsberg, a surviving spouse and guardian *ad litem* for decedent's children filed an action against multiple defendants in the second year after the decedent's death. The guardian *ad litem* asserted wrongful death claims for non-economic damages on behalf of the children. *Id.* at 206-07. The plaintiff asserted claims for personal injuries he sustained from the same accident that killed his wife. *Id.* The trial court allowed the jury to consider the surviving spouse's pecuniary loss when determining the award for the children's wrongful

death action. *Id.* at 207. The appellate court reversed this decision, finding that the spouse had forfeited the right to recover these damages by not filing a wrongful death action in the first year. *Id.* 208-09.

Even though <u>Landsmen</u> was decided four years after the 1988 amendments to the Wrongful Death Act took effect, the case involved a death that took place in August 1986, before the amendments were enacted. Thus, the court interpreted the act as written prior to 1988. The amended act explicitly allows a spouse to bring an action in the second year after the decedent's death, either alone or with the decedent's heirs. C.R.S. § 13-21-201(1)(b). As explained at length above, where the spouse does not bring an action alone, nor jointly with the heirs, but rather, the heirs bring suit, the spouse has 90 days after receiving written notice of the action to join as a party. *Id.* § 13-21-201(1)(b)(II).

It is clear that under the unamended act, once plaintiffs' filed their action in the second year after decedent's death, Riehl would have lost both his right to bring suit and a right to share in any judgment that plaintiffs recover. But, how does Riehl fare under the amended act? We have already found that Riehl lost his right to join the action because he never moved to join as a party within 90 days of receiving notice of the complaint. Extending <u>Landsmen</u> to apply under the current act, plaintiffs are not able to recover any damages for the pecuniary loss of Riehl since he declined to bring an action in the first year and failed to join plaintiffs' action within the allotted amount of time. *See* 7 Colo. Prac., Personal Injury Torts and Insurance § 17.14 (2d ed.)("When the children of the deceased bring the action because the surviving spouse failed to sue or did not join in the children's suit within 90 days after receiving notice of its commencement, they cannot recover for the pecuniary loss of the surviving spouse.").

Though Riehl cannot join as a party, and plaintiffs' cannot recover his pecuniary losses, a question remains regarding his right to share in plaintiffs' recovery under the Wrongful Death Act. Section 13-21-201(2) of the Act reads: "The judgment obtained in an action under this section shall be owned by such persons as are heirs at law of the deceased under the statutes of descent and distribution and shall be divided among such heirs at law in the same manner as real estate is divided according to said statute of descent and distribution." C.R.S. § 13-21-201(2). This section grants "heirs at law of the deceased" a right to share in judgment proceeds. Colorado courts have consistently and repeatedly construed the term "heirs," as used in the Wrongful Death Act, to "refer only to lineal descendants of the deceased." Whitenhill v. Kaiser Permanente, 940 P.2d 1129, 1131 (Colo.App. 1997); see Hindry v. Holt, 24 Colo. 464, 467, 51 P. 1002, 1003-04 (Colo. 1897); McCord v. Affinity Insurance Group, Inc., 13 P.3d 1224, 1227 (Colo.Ct.App. 2000). Even while acknowledging that "heirs" has a broader meaning in other contexts, the courts have interpreted it to mean only lineal descendants when analyzing the Wrongful Death Act. *See e.g.*, Allen v. Pacheco, 71 P.3d 375, 380 (Colo. 2003)(stating that it is "well-established" that "heirs," as used in the Colorado Wrongful Death Act, does not include spouses, but elsewhere it may denote any individuals who inherit real or personal property). Based on this consistent interpretation of "heirs," courts have held that § 13-21-201(2) protects a decedent's children's right to ownership of an award received by a surviving spouse, but "the converse is not true." Landsberg, 837 P.2d at 208; Williams, 745 P.2d 267, 269 (Colo.Ct.App. 1987).[2] This section does not provide a statutory right to a

---

[2] Though the courts in Landsberg and Williams reviewed the language of the unamended § 13-21-201(2), the amended language does not change the analysis. Before it was amended, the section began, "If the action under this section is brought by the husband or wife of the deceased, the judgment obtained in said action shall be owned by such persons as are heirs at law of the deceased." C.R.S. § 13-21-201(2), *amended by* Laws 1988, H.B. 1289, §§ 1, 2. This made clear that only when the spouse received judgment did it need to be shared with decedent's heirs. The act no longer limits this requirement to judgments received by spouses.

surviving spouse to share in the ownership of an award received by a decedent's children. Landsberg, 837 P.2d at 208; Williams, 745 P.2d at 269. Thus, as Riehl is decedent's spouse, not a lineal descendant, he is not an "heir" under the Wrongful Death Act and § 13-21-201(2) does not guarantee his right to share in judgment proceeds.

In addition to their wrongful death claims, plaintiffs also brought survival claims as personal representatives of the estate. Defendants' settlement offer was in exchange for a release of both the wrongful death claims and the survival claims. Any damages from survival claims go to the decedent's estate. As survival damages in tort actions are limited under Colorado law "to loss of earnings and expenses sustained or incurred prior to death and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after date of death," any survival damages attained in this case would most likely have been trivial. C.R.S. § 13-20-101; 7 Colo. Prac., Personal Injury Torts and Insurance § 17.4 (2d ed.). Regardless, Riehl would not have been entitled to any of these damages. In response to Riehl's objection, plaintiffs provide a copy of decedent's will as an exhibit to their memorandum. Riehl does not dispute that decedent died testate. Under the terms of decedent's will, Riehl does not inherit any real or personal property; decedent's residuary estate is to be divided, in equal shares, between her children.

Though Riehl has no right to a share of judgment proceeds under Colorado's Wrongful Death Act, and is not entitled to receive any portion of damages from a survival action, plaintiffs' complaint purports to state claims not only for plaintiffs' benefit but also for

---

Otherwise, the section reads the same today as it did prior to 1988, including the declaration that a judgment "shall be owned by such persons as are heirs at law of the deceased under the statutes of descent and distribution." Colorado courts have held that this language only applies to decedent's lineal descendants, *see* Landsberg, 837 P.2d at 208; Williams, 745 P.2d at 269, and the amendments to the statute do not disturb this holding.

Riehl's. In their motion to approve distribution of judgment proceeds, plaintiffs propose that each plaintiff and Riehl share a third of the judgment. Thus, even though Riehl does not have a legal right to proceeds, plaintiffs have offered him a share.

However, Riehl complains that the proposed distribution conflicts with a prior agreement he had with plaintiffs concerning both his share of any settlement and the payment of attorney's fees. He also contends that plaintiffs committed fraud. The factual dispute regarding the split of judgment proceeds stems from conflicting affidavits filed by Riehl, his brother and agent Frank Riehl, and Christine Champlin. In an affidavit attached to his reply in support of his objection, Riehl asserts that Champlin told him that she and her brother would give him 50 per cent of any proceeds from the litigation. Frank Riehl alleges that on February 1, 2004, Champlin told him the same thing – Riehl would receive 50 per cent of the judgment, while she and her brother would each take 25 per cent. This allegation is repeated in correspondence written by Cara Luther, Riehl's attorney, to Albert Durkin, plaintiffs' attorney. In her affidavit, Champlin states that she never knew Frank Riehl held power of attorney for Riehl, never discussed the ongoing litigation with Frank Riehl, and never agreed to give Riehl 50 per cent of any proceeds. Nonetheless, in a letter dated September 14, 2004, Durkin confirmed that his clients were "prepared to stand by [their] prior agreement of any settlement being divided 50 per cent to the children and 50 per cent to Mr. Riehl."

Riehl's allegations concerning an agreement as to attorneys' fees rest on correspondence between the attorneys. In a letter dated December 5, 2003, to Luther, Durkin wrote that it would be beneficial to their clients if at some point they discussed "some type of agreement in the event that a successful settlement of this claim can be negotiated." Subsequently, on January 9, 2004, Luther wrote to Durkin referencing a phone conversation they had had three

days earlier. In the letter, she asserted, "As for attorney fees, we both agreed that each attorney would obtain his/her fee from his/her respective client, based on our respective clients' shares of recovery." Nine months later, Durkin contradicted Luther's assessment of their agreement as to attorneys' fees. On September 14, 2004, he wrote, "[T]he settlement on this claim would be subject to our attorney's fees and costs incurred with Mr. Riehl to pay you directly for whatever your financial arrangements are with him out of his net settlement." Riehl also makes a variety of allegations concerning plaintiffs' attempts to exert undue influence to convince him to accept the proposed distribution of settlement and to dismiss his attorney.

Essentially, this is all much ado about nothing. Riehl has not alleged consideration for a contractual agreement to receive a larger share of the settlement. As he has no legal right, statutory or otherwise, to a share of a damage award or settlement, his abdication of such a right cannot serve as consideration. Any prior discussions that plaintiffs had with Riehl or his brother concerning Riehl's share of the proceeds are inconsequential – they follow not from legal obligation but from familial consideration.[3] Even if plaintiffs had previously told Riehl that they would give him half of any settlement, this is nothing more than an unenforceable promise to make a gift. Morrison v. Bradley, 655 P.2d 385, 388 (Colo. 1982). Riehl's recovery of one-third of the settlement under the proposed distribution of assets stems from nothing more than plaintiffs' gratuitous largesse. Thus, in accord with Colorado law we deny Riehl's objection, averting the settlement's depletion by the costs of continued litigation – a benefit to all parties involved. The distribution of judgment proceeds is approved.

---

[3] Though not beyond the realm of possibility, Riehl's allegations do cause one to wonder why the children of a woman whose will left nothing to her surviving spouse would agree to give him 50 per cent of any proceeds from a wrongful death action, leaving them to split the remainder and pay the costs and fees of the litigation.

## CONCLUSION

Riehl's motion to reconsider, and his objection to the motion to approve distribution of judgment proceeds are denied. Plaintiff's motion to approve distribution of judgment proceeds is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 19, 2005.